```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```
_____

**WACHOVIA COMMERCIAL MORTGAGE, INC.,** )
**d/b/a Wachovia Small Business** )
**Capital, and formerly known as The** )
**Money Store Commercial Mortgage** )
**Inc.,** )
)
    **Plaintiff,** )
)
**v.** )
)      **No. 05-2256 Ma/P**
**SANDHYA HOTELS, LLC, CHARLES S.** )
**MORAIS, and SUNIL P. MIR,** )
)
    **Defendants.** )
)
_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
_____

    Plaintiff Wachovia Commercial Mortgage, Inc., d/b/a/ Wachovia Small Business Capital, and formerly known as The Money Store Commercial Mortgage Inc. ("Wachovia") brings this action under the court's diversity jurisdiction for breach of contract against Defendants Sandhya Hotels, LLC ("Sandhya"), Charles S. Morais ("Morais"), and Sunil P. Mir ("Mir") (collectively, "Defendants"). Before the court is Wachovia's motion for summary judgment as to all Defendants, filed on March 24, 2006. Defendants filed a response on May 2, 2006. For the following reasons, Wachovia's motion is GRANTED.

**I. Background**

In 1997, Wachovia loaned money to Sun Enterprises, Inc. ("Sun") for the purchase of the Shelby Inn ("the Inn").[1] (Compl. ¶ 6.) Wachovia and Sun entered into a Commercial Loan and Security Agreement, and under that agreement, Wachovia acquired a first Deed of Trust and a promissory note from Sun in the amount of $781,000.00 ("the Note"). (Id.) Sun filed a Chapter 11 voluntary bankruptcy petition in 2001, which was dismissed on March 31, 2003. (Id. ¶ 7.) After the bankruptcy petition had been dismissed, the president of Sun informed Wachovia that he had found a potential buyer for Wachovia's interest in the Inn and the Note. (Id.)

On October 22, 2003, Wachovia entered into an agreement with Sandhya ("the Agreement") to sell the Note to Sandhya.[2] (Id. ¶ 8.) When the Agreement was made, Sun was in default on its obligations under the Note, and Wachovia had the right to foreclose. (Id. Ex. A ¶ 5.) The Agreement states that Sandhya would "operate the Inn, with the knowledge and consent of Sun," from the date of the Agreement. (Id. Ex. A ¶ 1.) Under the Agreement, Sandhya was to pay $500,000.00 for the Note no later

---

[1] The complaint and Wachovia's motion for summary judgment allege that the year of the loan was 1997. (Compl. ¶ 6; Pl.'s Mem. 2.) The contract between Wachovia and Sandhya, Morais, and Mir, however, gives the date of Sun's promissory note as December 28, 1995. (Compl. Ex. A 1.)

[2] Upon purchase of the Note, Wachovia was to assign both the Note and the Deed of Trust to Sandhya.

than August 31, 2004. (Id. Ex. A ¶¶ 5-6.) Beginning on December 1, 2003, Sandhya also agreed to pay Wachovia $5,000.00 on the first of each month for up to nine months. (Id. Ex. A ¶ 4.) The nine-month period was intended to allow Sandhya to perform work on the Inn that Sandhya "ha[d] determined to be necessary." (Id. Ex. A ¶ 2-3.) Sandhya was given the option of paying the $500,000.00 purchase price before August 31, 2004. (Id. Ex. A ¶ 5.) The exercise of this option would have eliminated Sandhya's obligation to make any additional monthly payments of $5,000.00 to Wachovia. (Id.)

Morais and Mir (collectively, "the Guarantors") signed the Agreement as guarantors.[3] The Agreement states that the Guarantors "expressly and fully guarantee all obligations of Sandhya" and that the guaranty is "binding on the Guarantors and...their respective heirs, legatees, executors, administrators, legal representatives, successors, and assigns." (Id. Ex. A ¶ 17.) The guaranty clause requires Wachovia to give written notice to the Guarantors if Sandhya should default on its obligations under the Agreement by failing to make a payment within five days of the date on which it was due. (Id.) The guaranty is "one of payment and performance..., and not only of collection." (Id.)

---

[3] There is a dispute among the parties about whether this was a personal guaranty.

Sandhya did not make its last monthly payment on August 1, 2004 and did not pay $500,000.00 by August 31, 2004. (Id. ¶ 12.) On February 18, 2005, counsel for Wachovia sent a letter to Sandhya, Morais, and Mir informing them that Sandhya was in default and demanding performance by Sandhya and/or the Guarantors within ten business days. (Id. Ex. B.) Wachovia has not received payment from Sandhya or the Guarantors. (Id. ¶¶ 13-14.) On April 6, 2005, Wachovia filed this action for breach of contract, requesting that the court award it the purchase price with interest and attorney fees and expenses.

**II. Jurisdiction and Choice of Law**

Wachovia is a New Jersey corporation. Sandhya is a Georgia limited liability company with its principal place of business in Georgia. Morais and Mir are both citizens of Georgia. Because the amount in controversy exceeds $75,000, the court has diversity jurisdiction under 28 U.S.C. § 1332.

In their answer to Wachovia's complaint, Defendants challenge this court's jurisdiction, asserting that the only connection to Tennessee is the location of the Inn. (Answer 1-2.) The location of the Inn and Defendants' relationship to the Inn would be sufficient to establish personal jurisdiction in Tennessee, but there is also a forum selection provision in the Agreement under which "Sandhya and Guarantors hereby consent and submit to the jurisdiction and venue of state and federal courts

sitting in Shelby County, Tennessee, with respect to the interpretation, performance and enforcement of this Agreement." (Compl. Ex. A ¶ 18.) Defendants do not argue that the forum selection clause is unfair or unreasonable, and the court can find no reason to declare it unenforceable. Therefore, the court finds that it has personal jurisdiction over Defendants because they have given their express consent to jurisdiction in the Agreement. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 11 (1972); Security Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 375 (6th Cir. 1999); Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co., 650 S.W. 2d 378, 380 (Tenn. 1983).

As a diversity action, the substantive law governing this case is state rather than federal law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). A federal district court is required to apply the "choice of law" rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Klaxon, 313 U.S. at 496. Therefore, this court must apply the Tennessee rule to determine which jurisdiction's law to apply.

The Agreement contains a choice of law provision, stating that the Agreement will be governed by the law of the state of Tennessee. (Compl. Ex. A ¶ 18.) "Tennessee will honor a choice of

law clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy." Wright v. Rains, 106 S.W. 3d 678, 681 (Tenn. Ct. App. 2003) (quoting Bright v. Spaghetti Warehouse, Inc., 1998 WL 205757, at *5 (Tenn. Ct. App. Apr. 29, 1998)). Tennessee, the state where the Inn is located, bears a reasonable relation to the transaction, and the choice of Tennessee law does not violate Tennessee's public policy. Therefore, the court will honor the choice of law clause and apply Tennessee substantive law in this case.

**III. Standard for Summary Judgment**

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue

for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." <u>Cloverdale Equip. Co. v. Simon Aerials, Inc.</u>, 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See <u>id.</u>

**IV. Analysis**

Wachovia seeks summary judgment, asserting that there is no genuine issue of material fact about whether Defendants breached the Agreement. "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." <u>ARC LifeMed, Inc. v. AMC-Tenn., Inc.</u>, 183 S.W. 3d 1, 26 (Tenn. Ct. App. 2005). For

7

a contract to be enforceable, "it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Local #3-677, 811 S.W. 2d 875, 879 (Tenn. 1991).

Interpreting a contract is a question of law. Union Planters Corp. v. Harwell, 578 S.W. 2d 87, 92 (Tenn. Ct. App. 1979). "In the absence of fraud or mistake a contract must be interpreted and enforced as written," according to "the usual, natural and ordinary meaning" of the words. Swanson v. Mid South Title Ins. Corp., 692 S.W. 2d 415, 419 (Tenn. Ct. App. 1984). "[T]he circumstances in which the words are used is always relevant, and usually indispensable. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting." Higgins, 811 S.W. 2d at 879 (quoting New York Trust Co. v. Island Oil & Transp. Corp., 34 F.2d 655, 656 (2d Cir. 1929)).

### A. Sandhya

Defendants argue that Wachovia cannot enforce the Agreement against Sandhya because it was an option agreement, because Wachovia gave no consideration, and because Wachovia had no right to make a contract involving the use of the Inn. The claim that the contract was an option agreement is based on the clause in the contract allowing Sandhya to pay the $500,000.00 purchase

8

price for the Note before August 31, 2004. Nothing in the Agreement, however, indicates that Sandhya had the option to abandon the Agreement by deciding before August 31, 2004, not to purchase the Note. On the contrary, the clauses discussing default by Sandhya, Wachovia, and the Guarantors demonstrate that the purchase and transfer of the Note by August 31, 2004, was not optional for any of the parties. (Compl. Ex. A ¶¶ 11-13.) The only option affected the timing, not the requirement, of payment. A normally constituted person would not have believed that the Agreement, as written, gave Sandhya the option not to purchase the Note.

The assertion that Wachovia gave no consideration also fails. Although Wachovia did not receive payment and, therefore, did not assign the Note to Sandhya, Wachovia was obligated to assign the Note when Sandhya paid the $500,000.00 purchase price. The Note is sufficient consideration for the $500,000.00 purchase price.

Wachovia also provided sufficient consideration for Sandhya's monthly payments of $5,000.00. Sun had defaulted on the Note, and Wachovia could have foreclosed at any time. Deferral of foreclosure gave Sandhya time to make improvements to the Inn and to fund the purchase of the Note. Deferral was sufficient consideration for Sandhya's monthly payments. Defendants argue that, because Sandhya failed to make its final monthly payment,

the Agreement was in default, and there was no consideration from Wachovia. That Defendants defaulted is irrelevant to whether there was sufficient consideration to form a valid, enforceable contract.

Finally, Defendants argue that Wachovia exceeded its authority by entering into a contract to allow Sandhya to operate the Inn and to perform work on the property when Wachovia did not own the Inn. The Agreement, however, states that Sandhya will "operate the Inn, with the knowledge and consent of Sun," the Inn's owners. (Id. ¶ 1.) There is no implication that Wachovia itself is allowing Sandhya the right to operate the Inn. Wachovia's only obligations under the Agreement were not to foreclose and to assign the Note to Sandhya when it had paid the purchase price, both of which Wachovia, as the holder of the Note and the Deed of Trust, had the authority to promise as consideration for the Agreement.

Therefore, the court finds that the Agreement is a valid, enforceable contract. No reasonable jury could find that Sandhya's failure to pay the amounts due by the dates established in the Agreement did not constitute nonperformance amounting to a breach of the Agreement or that Sandhya's breach did not give rise to damages.

**B. Guarantors**

Defendants argue that Morais and Mir signed as corporate,

not personal, guarantors of the Agreement. The court understands Defendants to mean that Morais and Mir signed the Agreement in their representative capacities as officers of Sandhya, rather than in their individual capacities. Although the Agreement does not specifically state that the Guarantors were personally guaranteeing Sandhya's obligations, because of the circumstances surrounding the Agreement, the language of the Agreement, and the Guarantors' signatures themselves, the court finds that a reasonable person could not have believed that Morais and Mir signed the Agreement in their representative capacities only.

If the Guarantors had signed in their representative capacities only, Sandhya would have been guaranteeing its own obligations, which would make the guaranty repetitive and frivolous. See Cone Oil Co. v. Green, 669 S.W. 2d 662, 664 (Tenn. Ct. App. 1983) ("A guaranty obligating only the corporation would not in any way add security to the obligation of the corporation, because the corporation was already fully obligated as principal.").

The Agreement states, "This guaranty is a continuing, absolute, unconditional, joint and several guaranty, binding on the Guarantors and, to the extent set out in Subsection D below, the wives of Guarantors, and their respective heirs, legatees, executors, administrators, legal representatives, successors, and assigns." (Compl. Ex. A ¶ 17B.) This statement could only

11

describe a personal guaranty. No reasonable person would believe that, by agreeing to these terms, he was only guaranteeing Sandhya's obligations in his representative capacity.

Finally, both Morais and Mir signed the Agreement as Guarantors using only their own names. "A corporate officer's signature, preceded by the corporation's name and followed by words denoting the officer's representative capacity, binds only the corporation." Bill Walker & Assocs., Inc. v. Parrish, 770 S.W. 2d 764, 770 (Tenn. Ct. App. 1989). Morais and Mir's signatures as guarantors were not preceded by the corporation's name and did not include words denoting their representative capacities. Mir, in fact, signed the Agreement twice, once on behalf of Sandhya and once as a guarantor. Mir's first signature comports with the requirements of a signature in a representative capacity, but Mir's signature as a guarantor is markedly different and could only be viewed as having been made in his personal capacity.

The undisputed facts establish that Morais and Mir personally guaranteed Sandhya's obligations under the Agreement. Under the terms of the Agreement, the Guarantors are guarantors of payment, not merely guarantors of collection.[4] (Compl. Ex. A ¶ 17A.) Although the Guarantors were not liable until Sandhya had

---

[4] A guarantor of collection or collectibility is liable for a principal's debt or obligations only after the other party exhausts all legal remedies against the principal, but a guarantor of payment becomes liable for the payment when the principal defaults. Black's Law Dictionary 711 (7th ed. 1999).

12

defaulted, the Agreement states that, upon receiving written notice of Sandhya's default, the "Guarantors shall immediately pay to Wachovia the amount past due." (Id.) Wachovia met the requirements of the Agreement by notifying the Guarantors that Sandhya had defaulted. Therefore, the Guarantors in their personal capacities are jointly and severally liable with Sandhya for the purchase price of the Note.

### C. Wachovia's Right to Sue

In addition to their other claims, Defendants assert that Wachovia's motion for summary judgment should be denied because the Agreement does not give Wachovia the right to sue, but only "the right to demand and receive payment." (Compl. Ex. A ¶ 13.) In the event of a default by Wachovia, on the other hand, "Sandhya shall have the right to bring a suit for specific performance against Wachovia." (Id.) The right to demand payment in a contract, however, does not mean merely the right to ask the other party to perform its obligations. To demand, in a legal sense, means "[t]o claim as one's due; to require; to seek relief." Black's Law Dictionary 441 (7th ed. 1999).

That the Agreement specifies that Sandhya could bring suit for specific performance does not mean that Wachovia could not bring suit, but that Sandhya could not sue for relief other than specific performance. The Agreement also contains a clause stating that, if one party defaults, it shall be responsible for

13

the attorney fees and expenses the other party incurs to enforce the Agreement. (Compl. Ex. A ¶ 15.) Although a party may incur attorney fees and expenses without bringing suit, the wording of the clause indicates that it was drafted on the assumption that either party to the Agreement could file suit to enforce it. Therefore, the court finds that Wachovia has the right to sue to enforce the Agreement.

### D. Relief

Although Wachovia does not use the words "specific performance" in its complaint, its demand for the full purchase price of the Note with interest is a demand for specific performance, not damages. Defendants object to Wachovia's demand for the full purchase price because Wachovia has not given them the Note. "It is a fundamental principle in the law of specific performance that for relief to be granted, mutuality of remedy must exist. Accordingly, specific performance will not be granted in favor of one party unless it can also be granted in favor of the other." Security Land Co. v. Touliatos, 716 S.W. 2d 918, 921 (Tenn. 1986). An order to Defendants to pay Wachovia the full purchase price for the Note would be conditioned on an order to Wachovia to assign the Note to Defendants upon receiving payment.

The issue before the court is whether specific performance is an appropriate remedy in this case. Specific performance is an equitable remedy, and it is in the discretion of the trial court to decide whether it should be awarded. Hillard v. Franklin, 41

S.W. 3d 106, 111 (Tenn. Ct. App. 2000). Specific performance is appropriate only in cases where damages are not an adequate remedy. Shuptrine v. Quinn, 597 S.W. 2d 728, 730 (Tenn. 1979). For a court to order specific performance, a "contract must be 'clear, complete and definite in all its essential terms.'" Hillard, 41 S.W. 3d at 111 (quoting Parsons v. Hall, 199 S.W. 2d 99, 100 (Tenn. 1947)).

"Given that real property is unique, damages are generally deemed an inadequate remedy for breach of real estate contracts, and, accordingly, such contracts are generally eligible for specific performance." Hillard, 41 S.W. 3d at 111. The Agreement is not technically a contract for the sale of real property, but for the sale of a promissory note secured by a deed of trust on real property. Given, however, the relationship between the Inn and the Note and the effect of that relationship on the potential market for the Note, the court finds that the Note is unique, and therefore, that damages would be an insufficient remedy for breach of the Agreement.

The Agreement clearly contemplates that the appropriate remedy for either party upon default by the other would be specific performance. Sandhya's sole remedy is to sue for specific performance. (Compl. Ex. A ¶ 13.) Wachovia may foreclose or "demand and receive payment." (Id.) As the court has found, the right to demand payment includes the right to sue, but it is, more particularly, the right to sue for specific performance, the

payment of the purchase price, rather than for damages.

Because there is no adequate remedy at law for the breach of the Agreement by Defendants, because the Agreement contemplates that specific performance is the appropriate remedy for a breach, and because the court finds that the Agreement is clear, complete, and definite in all its essential terms, the court grants Wachovia's prayer for payment of the $500,000.00 purchase price for the Note. Upon receiving payment from Sandhya and/or the Guarantors, Wachovia is directed to fulfill its obligations under the Agreement, by assigning to Sandhya the Note and Deed of Trust.

The court also awards Wachovia interest on the $500,000.00 from August 1, 2004. Sandhya breached the Agreement on August 1, 2004, when it failed to make its $5,000.00 monthly payment to Wachovia or to pay the full purchase price for the Note. Because the monthly payments were optional if Sandhya chose to pay the full purchase price for the Note before August 31, 2004, the full purchase price of the Note was due on August 1, 2004, and interest should accrue as of that date. The parties are directed to file, within thirty days of the date of service of this order, such affidavits and memoranda of fact and law as they may deem necessary to establish the appropriate rate of interest.

Finally, the court grants Wachovia's prayer for attorney fees and expenses, based on the Agreement's requirement that the

defaulting party pay all attorney fees and expenses incurred by the other party to enforce the Agreement. (Compl. Ex. A ¶ 15.) Wachovia is directed to file an affidavit of fees and expenses within thirty days of the date of service of this order.

**V. Conclusion**

Plaintiff Wachovia Commercial Mortgage, Inc.'s motion for summary judgment is GRANTED. The court finds that Defendant Sandhya Hotels, LLC, breached the Agreement and awards Wachovia specific performance, interest on the $500,000.00 purchase price of the Note from August 1, 2004, and attorney fees and expenses. Defendants Charles S. Morais and Sunil P. Mir as personal guarantors of payment for Sandhya are jointly and severally liable with Sandhya for this award.

So ordered this 2nd day of June 2006.

s/Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE